**Jeff Neil POWELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–83–00438–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

June 28, 1984.

Discretionary Review Refused Nov. 7, 1984.

George H. Tyson, Jr., Houston, for appellant.

Calvin A. Hartmann, Houston, for appellee.

Before EVANS, C.J., and WARREN and BULLOCK, JJ.

## OPINION

BULLOCK, Justice.

A jury convicted appellant of driving while intoxicated, and the trial court assessed his punishment at 12 days confinement and a fine of $350. Appellant brings two grounds of error on appeal.

■ In his first ground, appellant alleges that the trial court erred in admitting testimony from the arresting officer that appellant had refused a breathalyzer test. The relevant statute, Tex.Rev.Civ.Stat. art. 6701*l*–5, sec. 2,[1] provided as follows:

If a person under arrest refuses, upon the request of a law enforcement officer, to submit to a chemical breath test designated by the law enforcement officer as provided in Section 1, *none shall be given....* (emphasis added)

This court has previously held that a defendant's refusal to submit to a breathalyzer test under the old statute may be used against him at trial. *Parks v. State*, 666 S.W.2d 597 (Tex.App.—Houston [1st Dist.] 1984, no pet.). Appellant's first ground of error is overruled.

In his second ground of error, appellant alleges that the trial court erred in allowing the State to cross-examine him about several prior arrests. On direct examination, appellant's counsel asked him why the details of his arrest were clear in his mind. He responded as follows:

Because of the situation. The arrest, me being arrested, it's not something that occurs every day. I pay attention to something like that that happens to me.

On cross-examination, the prosecutor's first questions were as follows:

Q. I believe you testified on direct that your being arrested doesn't occur to you every day and therefore you really pay attention when it happens to you; right?

A. Yes, sir.

Q. Have you paid attention on the prior occasions when you were arrested?

A. Yes, sir, I have, tried to.

Q. Apparently you paid attention back around 1981 when—

DEFENSE COUNSEL: May we approach the Bench on this matter?

THE COURT: Let me see you up here just a minute.

(Whereupon an off-the-record discussion was held at the Bench.)

THE COURT: I am going to allow it.

DEFENSE COUNSEL: I would like to make an objection on the record to these future comments about *prosecution outside the scope of this trial.* We will object to any kind of continuing questions in this line and have a continuing objection on that matter, Your Honor.

THE COURT: All right. You understand my ruling, don't you?

PROSECUTOR: I believe I understand your ruling, Judge, that you will allow me to go into any good faith or anything that I have a good faith belief in that this Defendant has been arrested at different times; is that correct?

THE COURT: Right.

PROSECUTOR: You have instructed me not to go into what he was arrested for, the results, or anything like that.

THE COURT: That's right.

PROSECUTOR: I will abide by that. Thank you, sir.

Q. (By the Prosecutor) You say that these things really stand out because you aren't arrested every day. I took it by that to mean this doesn't happen to you very often. I will direct your attention back to 1975. Do those events stand out when you were arrested back in 1975?

A. They still do.

Q. Do they stand out in 1981 when you were arrested?

A. They certainly do.

Q. Did it stand out in '83 when you were arrested, not for this case but for another case?

A. Yes, sir.

---

1. Ch. 434, sec. 2, 1969 Tex.Gen.Laws 1468, *amended by* ch. 303, sec. 4, 1983 Tex.Gen.Laws 1578, effective January 1, 1984.

Q. Also in 1983 after the case that we are trying today, did all of the events stand out on that date?

A. Yes, sir.

DEFENSE COUNSEL: Your Honor, on the record in the presence of the jury I would like to make an objection to that matter. This commentary by innuendo is totally outside the scope of this trial, totally prohibited by the Code of Criminal Procedure. I will object and ask you to strike it from the record and ask you to—

THE COURT: I will overrule the objection, Counsel. *I believe your own client, from his own mouth, opened the door.* That's why I tried to let him understand that sometimes it's not the volume of testimony but the quality and the caliber of the testimony. I believe he—

DEFENSE COUNSEL: I will except to the Court's ruling but abide by it. (emphasis added)

■ An accused who takes the witness stand is subject to cross-examination and impeachment, but the State may not use a mere arrest to impeach the accused's credibility unless the accused has made a blanket assertion to the effect that he has never been in trouble with the law. *Bell v. State,* 620 S.W.2d 116, 125 (Tex.Crim.App. 1980) (op. on reh'g). The State argues that appellant did not preserve any error, because the objection was not specific enough to inform the trial court of the grounds of the objection. We disagree. Although the defense counsel did not use the words "extraneous offenses" or "improper impeachment" on the record, he did indicate that he was objecting to any questions concerning prosecutions for offenses that were not the subject of this trial.

We note that the trial court apparently granted the defense objection to the extent that it would not allow the prosecution to bring up the details of the extraneous offenses. The trial court commented that it believed appellant had "opened the door" to questions about the previous arrests, indicating that it would not otherwise have allowed impeachment by prior arrests. We

must first determine if the trial court correctly found that appellant had invited these limited questions by his answer on direct examination.

In *Nelson v. State,* 503 S.W.2d 543 (Tex. Crim.App.1974), the accused testified to two previous convictions, saying that he had not been "in trouble" at any other times. The State was allowed to ask the defendant about prior arrests for 12 other offenses, since his testimony had led the jury to believe that he had only two offenses in his past. The court held that the defendant had "opened the door" for these questions.

■ In the case at bar, the State argues that appellant's answer on direct that his arrest was "not something that happens every day" left the erroneous impression that he had never been arrested. Therefore, the State argues, it was allowed to rebut this erroneous impression with evidence of prior arrests. We again disagree with the State's position. Appellant's answer indicated that he had not been arrested *frequently,* but he made no blanket assertions of prior exemplary conduct, nor did he offer a partial list of prior offenses in an effort to mislead the jury. The record does not reflect any convictions for the arrests mentioned, and the trial court should not have allowed the prosecution to impeach appellant by questioning him about mere arrests.

■ We must still determine whether the trial court's error in allowing these questions was harmful enough to require reversal. The decision as to whether the introduction into evidence of extraneous offenses is reversible error is an ad hoc determination based on the merits of each case. *Ruiz v. State,* 579 S.W.2d 206 (Tex. Crim.App.1979). The test is whether there is a reasonable possibility that the evidence of extraneous offenses might have contributed to the conviction. Put another way, the State must show that the evidence of the extraneous offenses was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17

L.Ed.2d 705 (1967); *Bell v. State,* 620 S.W.2d 116, 126 (Tex.Crim.App.1981) (op. on reh'g).

In closing arguments, the defense counsel discussed the evidence of prior arrests:

> We had a bit of prosecution by innuendo up here when the defendant took the stand. You heard him asked about "weren't you arrested on this time and that time" and three times his reply was "yes, I was" but let me ask you something: Did you hear what he was arrested for? The law says the prosecution may discuss and tell you about the case prior to the arrest if it was an offense involving moral turpitude, bad moral character, or if it was a felony or if it was an offense of a similar nature. You didn't hear anything about his arrest because there were none like this, no prior DWI's, no offenses of moral turpitude, no felony convictions. We are not trying to hide anything from you right now. If there was something you would have certainly heard about it when he took the stand. There wasn't. Jeff Powell has been arrested. Let me ask you this: Because he has been arrested in the past, does that put one more or one less drink in his possession on that night, January 29th? The answer is unequivocally absolutely not. Is he any less credible because of the arrest? That's a decision for you, the triers of the fact, to make. But those cases are not on trial today.

The prosecutor, in his closing argument, also discussed the evidence of prior arrests:

> The defense attorney also brought up all of the different arrests you heard about—the arrest in '75, the arrest in '81, another arrest besides this in '83 before this case. Another arrest in '83 besides this after this case. I can't go into with you what those are for but all I brought it up for was this: the defendant said on the stand that he was well aware of all of the facts surrounding this case because he didn't get arrested on an everyday basis. I am kind of a country boy. I kind of took that to mean that he meant that he didn't get arrested very many times. I guess if he literally meant that he didn't get arrested every day, he is probably right. I can't show you that he got arrested every day. I think we showed you that he is certainly not a novice at getting arrested.

The State argues that the evidence of intoxication was overwhelming, and that this evidence, combined with appellant's "smug and cocky" demeanor, would have led the jury to convict appellant without the evidence of prior arrests. The State also argues, paradoxically, that the evidence of prior arrests was favorable to appellant, since he claimed to vividly remember each arrest. The prosecutor's closing argument belies this position, because it painted appellant as a man frequently in trouble with the law. Although the defense counsel tried to minimize the importance of the prior arrests by indicating that they could not have resulted in convictions for serious offenses, the prosecutor stressed the arrests themselves as indications of appellant's guilt.

Appellant and two friends testified that appellant had had nothing alcoholic to drink on the night in question. The police officer and a witness testified that appellant exhibited classic signs of intoxication, including slurred speech. The officer also testified that appellant failed all three field sobriety tests given to him.

The credibility of the witnesses was of primary importance in this case. In light of the arguments and the numerous contested facts in the case, we cannot say that the evidence of prior arrests was harmless beyond a reasonable doubt. Appellant's second ground of error is sustained. We reverse the judgment, and remand the case for a new trial.

Publish. Tex.R.Crim.App.P. 207.